LINDSAY, Judge.
These consolidated cases concern the efforts of the City of Shreveport, through its Airport Authority, to enforce an airport zoning ordinance by requiring certain landowners to trim or prune trees on their property. The trial court sustained the landowners’ plea of prescription of two years under LSA-R.S. 9:5625. The city appealed. For the following reasons, we affirm.
FACTS
The landowners, John Bryan, W.F. “Tucker” Bryan, Kathryn Bryan, and Jonathan Carver, own property located within the approach or clear zone for runway 14 of the Shreveport Regional Airport. The Bryan property is located on U.S. Highway 80 near its intersection with Metro Drive, while the Carver property is further from the airport, lying off of Maywood Drive. In April, 1985, the landowners were notified by the Shreveport Airport Authority (SAA) that certain trees on their property exceeded the height allowed by Ordinance 345 (1978), Section 8-81 of the Shreveport Code of Ordinances.
Specifically, Section 8-81 states in pertinent part:
(a) Except as otherwise provided in this Ordinance, no structure or tree shall be erected, altered, allowed to grow, or be maintained in any zone created by this Ordinance to a height in excess of the applicable height limit herein established for such zone. Such applicable height limitations are hereby established for each of the zones in question as follows:
[[Image here]]
(2) PRECISION INSTRUMENT RUNWAY ZONE (RUNWAY 13/31[1]): Slopes upward fifty (50) feet horizontally for each foot vertically beginning at the end of and at the same elevation as the primary surface and extending to a horizontal distance of 10,000 feet along the extended runway centerline; thence slopes upward forty (40) feet horizontally for each foot vertically to an additional horizontal distance of 40,-000 feet along the extended runway centerline.
James Edward Bennett, the director of airports for the city of Shreveport and the executive director of the SAA, testified that periodically the National Oceanic and Atmospheric Administration (NOAA) conducts surveys to identify areas near the airports where obstructions appear to exist. In January of 1981, field surveys were performed on land surrounding the Shreveport Regional Airport. Pursuant to this survey, an obstruction chart was compiled. The chart was published in August, 1981. This obstruction chart was furnished to the SAA for the specific purpose of advising the SAA of the existence of obstructions which might affect airport operations.
The obstruction chart indicates the tallest obstruction in a general area. Mr. Bennett testified that a darkened dot placed on the chart identifies an object that penetrates a specified slope of the clear zone.
Several other exhibits, including an aerial photograph identified by Mr. Bennett, show the location of the properties of the landowners involved in this case. On the obstruction chart, the properties at issue are situated in close proximity to the ILS (Instrument Landing System) middle marker in the approach zone to runway 14. At the approximate location of the Bryan property is a black dot with a notation that signifies a tree of 340 feet in height.[2] In the vicinity of the Carver property is a notation signifying a tree which is 347 feet tall.[2] Other trees are located in the vicinity of those noted; only the tallest trees are identified by their height in feet. The height of the trees shown on the chart are in excess of the heights allowed by the airport zoning ordinance.
Mr. Bennett testified that failure to remove the obstructions would result in the Federal Aviation Administration (FAA) raising their landing “minimums” so that *330 runway 14 could not be used in certain periods of inclement weather.
Following receipt of the obstruction chart, no immediate steps were taken by the SAA to cause the obstructions to be removed. The landowners introduced into evidence a copy of a letter dated October 12, 1982, from E.M. Jolley, the city’s consulting civil and structural engineer, to Ron Staley of the Houston Airport’s District Office of the FAA. In this letter, Mr. Jolley acknowledged that there were obstructions in the approaches to runways 14 and 32, and he advised Mr. Staley of the status of clearing these approaches. In April, 1985, the SAA requested the landowners’ permission to clear or prune some of the trees on their properties. The landowners did not consent.
In December, 1986, engineers employed by the city compiled an individual clearing and tree topping chart, which was admitted into evidence. This chart listed all of the trees on the Bryan and Carver properties, and showed their heights. Also indicated was the amount of cutting required to reduce the height of the trees to the fifty-to-one approach slope required for the approach zone. Thirteen of the sixteen trees on the Bryan property were too high, as were fourteen of the twenty trees on the Carver property. Some of the trees exceeded the height allowed by the zoning ordinance by more than twenty feet.
The Bryans applied to the Shreveport Airport Authority to be allowed to maintain the trees on their property. The Airport Authority denied their application and directed the landowners to allow the SAA to cut the trees. The landowners were advised that their failure to consent would result in action against them by the Office of the Shreveport City Attorney. The Bryans appealed the SAA decision, first to the Metropolitan Shreveport Board of Appeal and then to the Shreveport City Council, both of which upheld the original decision requiring the cutting of the trees.
Following the adverse rulings, the Bryans filed suit in the district court on November 12, 1986, seeking judicial review of the city council decision (No. 19,243-CA). Shortly thereafter, on November 21, 1986, the city filed suit to obtain injunctive relief against the Bryans and Mr. Carver to prohibit them from maintaining trees on their properties which were taller than the maximum height allowed by the ordinance (No. 19.244-CA). The landowners answered with several affirmative defenses, including the plea of prescription.
The cases were consolidated for trial. The court first addressed the issue of prescription. The court found that the obstruction chart, prepared in 1981, gave the city written notification of the violation of the ordinance. At that point, the two-year prescriptive period provided in LSA-R.S. 9:5625 commenced. Upholding the plea of prescription, the trial court reversed the decision of the city council in No. 19,243-CA, and dismissed the city’s petition in No. 19.244-CA.
The city filed a devolutive appeal. It assigned as error the trial court’s conclusion that the running of prescription began when the city received the 1981 obstruction chart.
LAW
The relevant prescription statute which is applicable in this zoning case is LSA-R. S. 9:5625. The statute provides in pertinent part:
A. All actions civil or criminal, created by statute, ordinance or otherwise, ... which may be brought by parishes, municipalities or their instrumentalities or by any person, firm or corporation to require enforcement of and compliance with any zoning restriction, building restriction or subdivision regulation, imposed by any parish, municipality or their instrumentalities, and based upon the violation by any person, firm or corporation of such restriction or regulation, must be brought within two years from the first act constituting the commission of the violation; ... and provided further that with reference to violations of use regulations all such actions, civil or criminal, ... must be brought within two years from the date the parish, municipality and their properly autho-
*331 rized instrumentality or agency if such agency has been designated, first had been actually notified in writing of such violation.... (emphasis added)
B. In all cases where the prescription provided for herein has accrued, the particular property involved in the violation of the zoning restriction, building restriction or subdivision regulation shall enjoy the same legal status as land uses, construction features of buildings or subdivisions made nonconforming by the adoption of any zoning restriction, building restriction or subdivision regulation....
This court has previously discussed this statute in the case of Irland v. Barron, 230 So.2d 880 (La.App. 2d Cir.1970). There, we stated:
Insofar as use violations are concerned, the general requirement of the statute that actions to enforce must be brought within two years of their commencement, is modified by the proviso to require that the prescriptive period only begins to run after knowledge of the violation has been acquired by the governmental body having authority over the violation. It is plain by the wording of the statute that a distinction has been made between violations concerning zoning restrictions, building restrictions or subdivision regulations and use regulations.[3]
As noted above, the statute makes a distinction between use regulations and other zoning regulations. As to other zoning regulations, legal action must be taken within two years of the “first act” constituting the violation.
With respect to use regulations, the legislature has chosen to grant the enforcing authorities a longer period of time within which to learn of violations and to act to remedy them, i.e., two years from the date of written notice of the violation.
In this case, the trees in question grew to an excessive height and encroached upon the airport’s approach zone by 1981. The 1981 NOAA chart conclusively demonstrates the presence of these particular obstructions. Additionally, it is clear that the obstruction chart sufficed as written notification to the SAA of the existence of these obstructions.
The city argues that the present violation is one of a zoning restriction, not of a use regulation, and consequently the applicable prescriptive period commences upon the first act constituting the violation, rather than upon receipt by the zoning authority of written notice of the violation. See State v. Baudier, 334 So.2d 197 (La.1976).
We agree. This case involves a zoning restriction violation, rather than the violation of a use regulation. The landowners were properly using their property and the trees thereon. However, when the trees grew to a height prohibited by the ordinance, the violation of the zoning restriction occurred. Nevertheless, in this case, as will be demonstrated hereafter, regardless of whether the violation was of a zoning restriction or a use regulation, the city’s right to require the landowner to remove the obstructions has prescribed.
In contending that its action has not prescribed, the city argues that the “first act” constituting a violation of the ordinance occurred either in April, 1985, when the landowner refused to allow the cutting and trimming of the trees, or in December, 1986, when the city identified the precise trees which were confirmed as encroachments within the clear zone.
We cannot agree with these contentions. To accept either of the dates suggested by the city would imply that the city’s own actions in seeking to remove the obstructions can wholly control what is deemed to be “the first act constituting the offense.” Although the 1981 chart demonstrated the presence of these obstructions, the city contends that the height restrictions should not be deemed violated until the city gave the landowners notice of the violation in April, 1985, or until the city took action to identify the individual obstructions in De *332 cember, 1986. This argument is untenable. Not only would it subject the landowners to the arbitrary and dilatory actions of the city, it would contravene the underlying purpose of the zoning height restrictions, which is to insure the safety of air travel-lers by providing a clear approach zone in which pilots can safely maneuver their aircraft.
The wording of LSA-R.S. 9:5625 indicates that the legislature gave latitude to zoning authorities in the enforcement of use regulations, not other zoning restrictions. Prompt action by the proper zoning authority is mandated by the requirement that prescription commences upon the “first act.” Furthermore, mere notification to a landowner by a zoning authority that the landowner is in violation of a zoning ordinance, with demand for compliance, is not sufficient to interrupt the running of prescription. Thus, neither of the dates suggested by the city have any bearing on the running of prescription.
We agree with the trial court that it is difficult to equate the continuous growing of a tree to an “act” constituting a violation of the zoning ordinance. However, the section of the zoning ordinance at issue regulates the height of the structures and trees in the airport approach zones. When a tree grows beyond the height permitted by the regulation, the zoning ordinance is violated. The precise date upon which the trees grew into the “clear zone” and exceeded the height requirements of the ordinance is obviously unknown. However, the trees clearly grew to an excessive height at some time prior to the undertaking of the NOAA surveys in 1981, as the chart resulting from these surveys plainly depicts these obstructions in the vicinities of the Bryan and the Carver properties.
While we cannot precisely pinpoint “the first act constituting the commission of the violation,” namely, the date the trees violated the height regulations, it is apparent that the airport authority had received written notification of the violations, at the latest, by August, 1981, when the obstruction chart was published. Even if the more lenient prescriptive period for use violations were applicable, and prescription ran from the time the city received written notification, the city had that notification by virtue of the 1981 NOAA chart. Consequently, under either prescriptive period provided in LSA-R.S. 9:5625, prescription accrued long before the city instituted any proceedings to remove the obstructions and eliminate the violations.
The landowners have carried their burden of proving that prescription has accrued. The city’s assignment of error is meritless.
We also note, however, that the accrual of prescription does not mean that the authorities are precluded from pursuing other measures to remove the obstructions. The trees constitute an airport hazard as described in LSA-R.S. 2:382. Their presence effectively “reduces the size of the area available for landing, taking-off, and maneuveriiig of aircraft, thus tending to destroy or impair the utility of the airport or landing field and the public health, public safety, or general welfare.” Consequently, the city may proceed to remedy the situation by expropriation pursuant to LSA-R.S. 2:389 of the Airport Zoning Law.
CONCLUSION
The judgment of the trial court sustaining the exception of prescription is affirmed. To the extent permitted by law, costs are assessed to appellant.
AFFIRMED.

. At some point, runways 13 and 31 were redes-ignated, respectively, as runways 14 and 32.

. Presumably this means above sea level.

. At the time the Irland decision was rendered, LSA-R.S. 9:5625 provided that the two-year prescriptive period for use regulation began to run when the authorities received knowledge of the violation. The act was amended to its present form, which requires written notification of the use violation, by Acts 1972, No. 54, § 1.